IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLEGHENY DEFENSE PROJECT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Case Number 04-1466 |
| ) | |
| DALE BOSWORTH, Chief, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| AMBROSE, Chief District Judge ) | |

## SYNOPSIS

Pending is Plaintiff's, Allegheny Defense Project's ("ADP"), Motion to Strike Post Hoc Documents (Docket No. 26) and Motion for Summary Judgment (Docket No. 31). Plaintiff's Motion for Summary Judgment seeks a permanent injunction preventing Defendants, Dale Bosworth, United States Forest Service ("USFS"), Kevin B. Elliot, John Schultz, and Leon Blashock, from bidding, awarding, allowing any logging, or otherwise proceeding in any way with the timber sales from the proposed 19 individual salvage logging projects"[1] in the Allegheny National Forest ("ANF") until Defendants comply with the law. (Docket No. 31, p. 2). Specifically, Plaintiff asserts that Defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §4332, by improperly excluding from the NEPA process 19 decisions to log approximately 1700 acres of salvage as the result of a single storm event that occurred on July 21, 2003. Defendants and Intervenors have filed Responses. (Docket Nos. 39, 40 and 41). ADP has filed a Response

---

[1]The proposed 19 individual salvage logging projects include: FR 191, FR 395/396, FR 468/594, South of KEF, Thad Shanty, James City, Windy City, West 127, FR 216, FR 631/727, and West Salmon salvage logging projects in the Marienville Ranger District of the Allegheny National Forest; and the Bull North (Sheriff Central, Bull North Blowdown), Bull South (FR 254, FR 117, Sheriff Central), FR 252 (Blowdown, Removal AV), West Branch Tionesta Creek, Mudlick, Lewis, Guffey, and Chappel salvage logging projects in the Bradford Ranger District of the Allegheny National Forest.

thereto. (Docket No. 53). Based on my opinion as more fully set forth below, the Motion to Strike (Docket No. 26) is granted in part and denied in part, and the Motion for Summary Judgment is denied.

**OPINION
AND
ORDER OF COURT**

I.    **Motion to Strike Post Hoc Documents (Docket No. 26)**

ADP requests that this Court strike portions of the administrative record. (Docket No. 26). Specifically, ADP requests that this Court strike the entirety of Book 38 and Tab 12 of Book 39. (Docket No. 26). According to ADP, these documents were issued after the challenged decisions were rendered in this case. (Docket No. 27, p. 2). Consequently, ADP asserts that said documents may not be reviewed by this Court and must be stricken as improper post hoc explanation documents. (Docket No. 27).

In response to the document at Tab 12 of Book 39, Defendants argue that the information contained within the document was before the agency when it made its decisions on some of the projects. (Docket No. 41, p. 1). The document is titled "Endangered and Threatened Species Monitoring On the Allegheny National Forest (Fiscal Year 2003) Compliance with the Terms and Conditions In the Biological Opinion." (Docket No. 47, Book 39, Tab 12). The document is dated July 2004. After a review of the record, it appears as though this document was available for consideration during some of the decisions made on the 2003 windstorm salvage logging projects.[2] (Docket No. 32, Ex. 4). Thus, I find that it was properly designated by the USFS as part of the administrative record. Therefore, ADP's Motion to Strike Tab 12 of Book 39 of the Administrative Record is denied.

---

[2]The challenged decisions were signed between May 21 and August 17, 2004. (Docket No. 47: Book 9, Tab 15; and Book 37, Tab 13).

2

With regard to Book 38, Defendants acknowledge that these materials post date the challenged decision; however, because ADP was seeking a preliminary injunction, Defendants included said materials as it relates to irreparable harm. (Docket No. 41, pp. 1-2). Since this Court has already ruled upon the Motion for Preliminary Injunction and no appeal was taken therefrom, and because these documents are not directly cited to by Defendants in support of the opposition to the Motion for Summary Judgment, ADP's Motion to Strike Post Hoc Document Book 38 from the administrative record is granted.

## II. ADP's Motion for Summary Judgment (Docket No. 31)

### A. Standard of Review for Motions for Summary Judgment

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of

record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988), *quoting, Celotex*, 477 U.S. at 322.

### B.    Scope of Review

All parties agree that the scope of my review is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. §701, et seq. *See,* Docket No. 32, pp. 3-4; Docket No. 40, p. 12; and Docket No. 39, pp. 2-3. Pursuant to the APA, the scope of my review is to determine whether the agency action was: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (B) contrary to constitutional right, power, privilege, or immunity;... [or] (D) without observance of procedure required by law.... 5 U.S.C. §706(2).

> [T]he generally applicable standards of § 706 require the reviewing court to engage in a substantial inquiry. Certainly, the [agency's] decision is entitled to a presumption of regularity. But that presumption is not to shield [the agency's] action from a thorough, probing, in-depth review. The court is first required to decide whether the [agency] acted within the scope of [its] authority ... Scrutiny of the facts does not end, however, with the determination that the [agency] acted within the scope of [its] statutory authority. Section 706(2)(A) requires a finding that the actual choice made was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency. The final inquiry is whether the [agency's] action followed the necessary procedural requirements.

*Society Hill Towers Owners' Ass'n v. Rendell,*  210 F.3d 168, 178-79 (3d Cir. 2000), *quoting Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415-417 (1971) (citations omitted).

### C. NEPA and Related Regulations

The purpose of NEPA is "[t]o declare a national policy which will encourage productive and enjoyable harmony between man and his environment...." 42 U.S.C. §4321. In other words, it is the "national charter for protection of the environment." 40 C.F.R. §1500.1(a). The related regulations "tell federal agencies what they must do to comply with the procedures and achieve the goals of the Act." *Id.* There are three typical classes of action that may be taken by the USFS: 1) those which require an environmental impact statement[3] ("EIS"); 2) those which require environmental assessments[4] ("EA"), but not necessarily EISs; and 3) those which are do not require either an EIS or an EA, known as categorical exclusions ("CE"). 40 C.F.R. §1057.3(b)(2). In this case, the USFS Service determined that the 19 Salvage Projects were categorically excluded from the NEPA process.

#### 1. Categorical Exclusions

The ADP's main argument is that the USFS violated NEPA and related regulations in deciding that the 19 salvage projects fall within the CE exception to NEPA. *See,* Docket No. 32 pp. 4-14. A CE has been defined by as follows:

> "Categorical Exclusion" means a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations (§107.3) and for which, therefore, neither an

---

[3]"'Environmental Impact Statement' means a detailed written statement as required by sec. 102(2)(C) of the Act." 40 C.F.R. §1508.11. An environmental impact statement is not necessary if a categorical exclusion applies. 40 C.F.R. §1051.4(a)(2).

[4]"'Environmental Assessment': (a) Means a concise public document for which a Federal agency is responsible that serves to: (1) Briefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact. (2) Aid an agency's compliance with the Act when no environmental impact statement is necessary. (3) Facilitate preparation of a statement when one is necessary. (b) Shall include brief discussions of the need for the proposal, of alternatives as required by sec. 102(2)(E), of the environmental impacts of the proposed action and alternatives, and a listing of agencies and persons consulted." 40 C.F.R. §1508.9. "An assessment is not necessary if the agency has decided to prepare an environmental impact statement." 40 C.F.R. §1501.3.

> environmental assessment nor an environmental impact statement is required. An agency may decide in its procedures or otherwise, to prepare environmental assessments for the reasons stated in §1508.9 even though it is not required to do so. Any procedures under this section shall provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect.

40 C.F.R. §1508.4. In opposition, Defendants and Intervenors suggest that the use of the CE for the 19 salvage projects was not a violation of NEPA.

The 19 salvage projects were categorically excluded under Category 13, which "allows the salvage of dead or dying trees not to exceed 250 acres with no more than ½ mile of temporary road construction. The categorical exclusion allows salvage harvest in areas where trees have been severely damaged by forces such as fire, wind, ice, insects, or disease and still have some economic value as a forest product." 68 Fed.Reg. 44598 (July 29, 2003); see also, Docket No. 32, Tab 9, p. 15. In addition, there must be no extraordinary circumstances. 40 C.F.R. §1508.4; see also USFS Handbook 1909.15§30.3(1) at Docket No. 32, Tab 9. In determining whether extraordinary circumstances exist, the USFS should consider the following resource conditions: "threatened or endangered species or their critical habitat; flood plains, wetlands, or municipal watersheds; Congressionally designated areas such as wilderness, wilderness study areas, or national recreation areas; inventoried roadless areas; research natural areas; and Native American religious or cultural sites, archeological sites, or historic properties or areas." 67 FR 54622-02; Docket No. 32, Tab 9 §30.3(2). The "mere presence of one or more of these conditions does not preclude the use of a categorical exclusion." 70 FR 32713-01; Docket No. 32, Tab 9 §30.3(2).

After a review of the record according to the proper standard and scope of review in this case, I find that summary judgment in favor of ADP is not warranted. In particular, there is evidence of record that the 19 projects meet the definition for CE: 1) salvage of dead or dying trees not to exceed 250 acres with no more than ½ mile of temporary road construction, and 2) no extraordinary circumstances. See, Docket No. 46, Book 3, Tab 1, p. 71 (acreage ranging from 18 acres to 205, in four counties, scattered over 98,500 acres, with no new roads proposed); see also,

Docket No. 47: Book 14, Tab 1; Book 9, Tab 15; Book 30, Tab 13; Book 32, Tab 13; Book 34, Tab 13; Book 35, Tab 1; Book 37, Tab 13; and Docket No. 46 (all demonstrating the analysis performed by the USFS to determine there are no extraordinary circumstances).  Consequently, summary judgment in favor of the moving party, ADP, is not appropriate.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLEGHENY DEFENSE PROJECT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Case Number 04-1466 |
| ) | |
| DALE BOSWORTH, Chief, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| AMBROSE, Chief District Judge ) | |

## ORDER OF COURT

**AND NOW,** this 15th day of November, 2005, after careful consideration of Plaintiff's Motion to Strike (Docket No. 26) it is ordered that said Motion is granted in part and denied in part as follows:

1. Plaintiff's Motion to Strike Tab 12 of Book 39 of the Administrative Record is denied; and

2. Plaintiff's Motion to Strike the entirety of Book 38 is granted.

It is further ordered that upon consideration of Plaintiff's Motion for Summary Judgment (Docket No. 31), said Motion (Docket No. 31) is denied.

A settlement conference is set for this case on November 22, 2005, at 10:30 a.m.

BY THE COURT:

_____
Donetta W. Ambrose,
Chief U.S. District Judge

8